FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 20, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TEZOC M.,[1] | No. 4:23-CV-05073-MKD |
| Plaintiff, | ORDER AFFIRMING THE COMMISSIONER'S DECISION |
| v. | **ECF Nos. 9, 14** |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

1    Before the Court are the parties' briefs.[3]  ECF Nos. 9, 14.  The Court,

2  having reviewed the administrative record and the parties' briefing, is fully

3  informed.  For the reasons discussed below, the Court affirms the Commissioner's

4  decision.

## JURISDICTION

6    The Court has jurisdiction over this case pursuant to 42 U.S.C. §

7  1383(c)(3).

## STANDARD OF REVIEW

9    A district court's review of a final decision of the Commissioner of Social

10  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g)

11  is limited; the Commissioner's decision will be disturbed "only if it is not

12  supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698

13  F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant

14  evidence that a reasonable mind might accept as adequate to support a

_____

16  [3] Plaintiff's opening brief is labeled a Motion for Summary Judgment.  ECF No.

17  9.  However, the supplemental rules for Social Security actions under 42 U.S.C. §

18  405(g) went into effect on December 1, 2022; Rule 5 and Rule 6 state the actions

19  are presented as briefs rather than motions.  Fed. R. Civ. P. Supp. Soc. Sec. R. 5,

20  6.

ORDER - 2

conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.902(a). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## SEQUENTIAL EVALUATION PROCESS

After a child has been found to be entitled to disability benefits, the Commissioner is required to redetermine whether the claimant continues to be

ORDER - 3

entitled to benefits once they reach the age of 18.  20 C.F.R. § 416.987.  The

Commissioner has established a multi-step sequential evaluation process for

determining whether a person's disability has ended.  20 C.F.R. § 416.994(b)(5).

This multi-step continuing disability review process is similar to the five-step

sequential evaluation process used to evaluate initial claims, with additional

attention as to whether there has been medical improvement from the point of the

finding of disability (the comparison point decision) through the redetermination

decision.  *Compare* 20 C.F.R. § 416.920 *with* § 416.994(b)(5).  However, when a

child's eligibility for benefits is redetermined under the adult criteria when the

child reaches age 18, the ALJ must consider the redetermination under the rules

that apply to an adult's new application, 20 C.F.R. § 416.920, not the criteria set

forth in 20 C.F.R. § 416.994.  20 C.F.R. § 416.987(b).  A claimant is disabled

only if his impairment is "of such severity that [s]he is not only unable to do his

[or her] previous work[,] but cannot, considering his [or her] age, education, and

work experience, engage in any other kind of substantial gainful work which

exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant

ORDER - 6

is capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 11, 2009, Plaintiff protectively filed for Title XVI

supplemental security income benefits alleging a disability onset date of February

1, 2004.  Tr. 200, 537.  Plaintiff was found disabled as of February 1, 2009.  Tr.

88, 90.  At age 18, Plaintiff's eligibility was redetermined, and on September 18,

2017, he was notified he no longer qualified for benefits.[4]  Tr. 104-06.  Plaintiff

requested a reconsideration of the cessation, and the decision was upheld on May

15, 2018.  ECF No. 107-08, 111-19.  Plaintiff appeared before an administrative

law judge (ALJ) on October 17, 2019.  Tr. 33-87.  On November 12, 2019, the

ALJ denied Plaintiff's claim.  Tr. 12-30.  Plaintiff appealed the denial, resulting in

a remand from this Court.  Tr. 611-18.  Plaintiff appeared for a remand hearing on

---

[4] An age 18 redetermination is considered a new claim filed on the day the

claimant attains age 18; as such, Plaintiff's redetermination was considered filed

in February 2017, and the Court applies the regulations applicable to claims filed

before March 27, 2017.  *See* DI 24503.050 Determining the Filing Date for

Evaluating Evidence, SSA POMS DI 24503.050.

ORDER - 7

February 2, 2023.  Tr. 558- 82.  At the hearing, Plaintiff requested a closed period

of disability from November 2017 to January 19, 2020, when Plaintiff began

working at an SGA level.  Tr. 538, 565.  On March 13, 2023, the ALJ again

denied Plaintiff's claim.  Tr. 534-57.

The ALJ did not address any step one findings and thus did not make a

determination regarding SGA.  The ALJ noted Plaintiff requested a closed period

because of his return to work.  Tr. 545.  At step two, the ALJ found that Plaintiff

has the following severe impairments: diabetes, borderline IQ, and attention-

deficit hyperactivity disorder (ADHD).  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  *Id.*  The ALJ then concluded that Plaintiff has the RFC to perform a

full range of work at all exertional levels with the following limitations:

> [Plaintiff] is limited to simple, routine, repetitive tasks with no detail
> work, no more than ordinary production requirements, no fast-paced,
> assembly-type work, and no complex tasks.  He can handle no more
> than occasional changes in work duties.  He cannot work at
> unprotected heights.

Tr. 544.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 549.  At

step five, the ALJ found that, considering Plaintiff's age, education, work

experience, RFC, and testimony from the vocational expert, there were jobs that

ORDER - 8

existed in significant numbers in the national economy that Plaintiff could

perform, such as laundry worker, industrial cleaner, and change house attendant.

Tr. 550.  Therefore, the ALJ concluded Plaintiff's disability ended on September

18, 2017, and he has not become disabled again since that date.  *Id.*

Per 20 C.F.R. § 416.1484, the ALJ's decision following this Court's prior

remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him supplemental security income benefits under Title XVI of the Social Security

Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ conducted a proper step-three analysis;

3.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 9 at 5-6.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ erred in her consideration of the opinions of

Lynn Orr, Ph.D.; Richard Borton, Ph.D.; and Steven Rubin, Ph.D.  ECF No. 9 at

8-16.

ORDER - 9

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Orr

On September 5, 2017, Dr. Orr, a consultative examiner, conducted a psychological evaluation and rendered an opinion on Plaintiff's functioning. Tr. 424-28. Dr. Orr diagnosed Plaintiff with ADHD, predominantly inattentive presentation; specific learning disorder with impairment in reading, written expression, and mathematics; and borderline intellectual functioning. Tr. 427. Dr. Orr opined Plaintiff has limited fund of knowledge, some difficulty in concentration, impaired abstract thinking, and limited insight and judgment. Tr. 428. Dr. Orr further opined Plaintiff is a "good candidate" for simple, redundant tasks with an absence of complexity with instructions or information repeated frequently; he will have difficulty with sophisticated social communication; and he will need assistance with money management. *Id.* The ALJ gave Dr. Orr's opinion some weight. Tr. 548. As Dr. Orr's opinion was contradicted by Dr. Rubin's opinion, the ALJ was required to give specific and legitimate reasons to reject Dr. Orr's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found some of Dr. Orr's opinion was inconsistent with his objective medical findings. *Id.* A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Furthermore, incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). The ALJ found Dr. Orr's opinion was generally consistent with his findings, however, the opinion the Plaintiff would have difficulty with sophisticated social communication was not consistent the evaluation. Tr. 548. The ALJ noted Dr. Orr described Plaintiff as cooperative and friendly throughout the evaluation. *Id.* (citing Tr. 425). Dr. Orr did not cite to any evidence of abnormal social functioning during the evaluation and does not offer an explanation as to why Plaintiff is limited in his ability to handle sophisticated social communication. Tr. 425. Plaintiff reported he had dated and was in a serious relationship at the time of the examination, he is part of a gamers' club and previously was involved in radio broadcasting, and he spends some time with family and friends. Tr. 425-26.

ORDER - 12

While Dr. Orr opined Plaintiff would need information repeated frequently, the ALJ found this was inconsistent with the examination, which documented only "slight memory problems." Tr. 548. The ALJ noted Plaintiff was able to provide details of past events and remember three out of three objects after a delay. *Id.* However, Dr. Orr also stated Plaintiff's immediate memory score indicated "some significant difficulty," as his scaled score was a five, when the average score is a 10. Tr. 425. His working memory score placed him in the fourth percentile. Tr. 427. Plaintiff also had abnormal concentration testing results; he made four errors during serial 3's and had significant difficulty spelling "world" backward. Tr. 426. However, it is not clear if Plaintiff's concentration testing difficulties were caused by impaired concentration, or challenges due to limited math and spelling skills, as Dr. Orr noted Plaintiff had difficulty with mathematics, and has a "limited vocabulary." *Id.* The ALJ reasonably found these portions of the opinion were inconsistent with the examination findings.

Second, the ALJ found a portion of Dr. Orr's opinion was vague. Tr. 548. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228. The ALJ noted that Dr. Orr did not define what "sophisticated" communication refers to, and the vagueness rendered the opinion less probative. Tr. 548. Dr. Orr only elaborated that Plaintiff "may have difficulty understanding sophisticated social cues and is not a good candidate for

1    tasks that require sophisticated social judgment." Tr. 427.  The ALJ reasonably

2    found the opinion was vague.

3        Plaintiff contends the ALJ erred in rejecting portions of Dr. Orr's opinion.

4    ECF No. 9 at 9.  Plaintiff notes that the ALJ gave great weight to the opinion in

5    the prior decision but gave the opinion only some weight in the second decision.

6    *Id.*  However, in the prior decision, the ALJ did not address the portions of the

7    opinion the ALJ now explicitly rejects.  Tr. 23.  The case was remanded with a

8    direction to the ALJ to reconsider the opinion evidence and the RFC, in part

9    because the ALJ did not address the limitation regarding a need for frequently

10   repeated information.  Tr. 621.  The ALJ has now considered the limitation and

11   offered supported reasons to reject the opinion.  While Plaintiff offers an

12   alternative interpretation of the evidence, the Court may not reverse the ALJ's

13   decision based on Plaintiff's disagreement with the ALJ's interpretation of the

14   record.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to

15   more than one rational interpretation" the court will not reverse the ALJ's

16   decision).  The ALJ reasonably interpreted the medical records and Dr. Orr's

17   opinion, and found the opinion and other evidence supported the limitations set

18   forth in the RFC.

19

20

ORDER - 14

1
    *2. Dr. Borton*

2
    On September 17, 2017, Dr. Borton, a State agency psychological

3
consultant, rendered an opinion on plaintiff's functioning.  Tr. 94-97.  Dr. Borton

4
found Plaintiff had the following severe impairments: ADHD, borderline

5
intellectual functioning, and learning disorder.  Tr. 94.  Dr. Borton opined Plaintiff

6
is moderately limited in understanding/remembering detailed instructions and

7
carrying out detailed instructions, sustaining an ordinary routine without special

8
supervision, maintaining attention/concentration for extended periods, completing

9
a normal workday/workweek without interruptions from psychological symptoms,

10
performing at a consistent pace without an unreasonable number and length of rest

11
periods, responding appropriately to changes in the work setting, and setting

12
realistic goals or making plans independently of others; he would be capable of

13
fairly routine and redundant simple, routine, tasks, that may require repetition of

14
instructions/information on occasion, with occasional supervision; he would have

15
more difficulty with complex repetitive tasks; he would have occasional difficulty

16
with sustained concentration/persistence, with occasional need for explanation and

17
redirection or information but capable of persisting and concentrating for at least

18
one to three step tasks, with repetition and not time sensitive tasks until well-

19
learned; he would do better with superficial social contacts and he may be slower

20
to respond in social situations; he would need some additional time to adapt to

ORDER - 15

1 non-routine changes; he may benefit from some help with planning and goal

2 setting; he would need a protective payee; and he would need some reinforcement

3 of information from time to time even for simple routine tasks.  Tr. 96-97.  The

4 ALJ gave Dr. Borton's opinion great weight.  Tr. 549.  The Commissioner may

5 only reject the opinion of a non-examining physician by reference to specific

6 evidence in the medical record.  *Sousa v. Callahan,* 143 F.3d 1240, 1244 (9th Cir.

7 1998) (citation omitted); *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995).

8       Plaintiff contends the ALJ erred in giving great weight to Dr. Borton's

9 opinion but not incorporating all the limitations into the RFC.  ECF No. 9 at 13-

10 14; ECF No. 15 at 7-8.  An ALJ need not provide reasons for rejecting a

11 physician's opinion where the ALJ incorporated them into the RFC.  *Turner v.*

12 *Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010).  Plaintiff

13 contends Dr. Borton's opinion that Plaintiff needs reinforcement, redirection,

14 reinstruction, repetition, and/or additional explanations for simple routine tasks is

15 a disabling opinion.  *Id.*  However, Dr. Borton opined that Plaintiff had no more

16 had moderate limitations, and stated Plaintiff retains the compacity to understand,

17 remember, and complete simple, routine tasks in a work setting, with some

18 modest reinstruction from supervisors.  Tr. 94-97.  Dr. Borton's opinion also

19 resulted in a finding of non-disability, indicating this is not a disabling opinion.

20 As Dr. Borton's opinion was not disabling, and the ALJ adequately interpreted the

ORDER - 16

opinion and accounted for it in the RFC, the ALJ did not err in her analysis of Dr. Borton's opinion.

### 3. Dr. Rubin

On October 17, 2019, Dr. Rubin, a medical expert, testified regarding Plaintiff's impairments and limitations. Tr. 43-47. Dr. Rubin testified there was evidence of ADHD, learning disorder, and "probably" borderline intellectual functioning. Tr. 43. He opined Plaintiff has moderate limitations in understanding, remembering, and applying information, and mild limitations in concentration, persistence, or pace, interacting with others, and adapting or managing oneself. Tr. 44. Dr. Rubin further opined the evidence "could mean [Plaintiff] works slower than other people in certain things," Tr. 44-45, and "in a high paced situation, with very careful criteria, and trying to compete with other people, I think he'll make mistakes," Tr. 47. He opined Plaintiff would have difficulty with complex instructions and environmental changes that require adapting and judgment and he would do better in a repetitive situation. *Id*. The ALJ gave Dr. Rubin's opinion some weight. Tr. 548.

Plaintiff contends the ALJ erred in giving Dr. Rubin's opinion great weight, when Dr. Rubin's testimony contained errors. ECF No. 9 at 15-16. However, the ALJ did not give the opinion great weight, but rather gave the opinion some weight. Tr. 548. Further, Plaintiff offers an alternative interpretation of Dr.

ORDER - 17

1   Rubin's testimony and the evidence, but the Court cannot remand based on an

2   alternative interpretation of the evidence when the ALJ's interpretation is

3   reasonable.  *See Tommasetti*, 533 F.3d at 1038.  The ALJ reasonably interpreted

4   Dr. Rubin's testimony and offered an explanation for the interpretation and

5   incorporation of the opinion into the RFC.  Tr. 548-49.  The ALJ did not err in

6   giving weight to Dr. Rubin's opinion.  Plaintiff is not entitled to remand on these

7   grounds.

8   **B. Step Three**

9       Plaintiff contends the ALJ erred at step three by failing to find Plaintiff's

10  impairments meet or equal Listings 12.05 or 12.11.  ECF No. 9 at 16-18.  At step

11  three, the ALJ must determine if a claimant's impairments meet or equal a listed

12  impairment.  20 C.F.R. § 416.920(a)(4)(iii).

13      The Listing of Impairments "describes for each of the major body systems

14  impairments [which are considered] severe enough to prevent an individual from

15  doing any gainful activity, regardless of his or her age, education or work

16  experience."  20 C.F.R. § 416.925.  "Listed impairments are purposefully set at a

17  high level of severity because 'the listings were designed to operate as a

18  presumption of disability that makes further inquiry unnecessary.'"  *Kennedy v.*

19  *Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S.

20  521, 532 (1990)).  "Listed impairments set such strict standards because they

ORDER - 18

automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy,* 738 F.3d at 1176. If a claimant meets the listed criteria for disability, she will be found to be disabled. 20 C.F.R. § 416.920(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id*. However, "'[m]edical equivalence must be based on medical findings,'" and "'[a] generalized assertion of functional problems is not enough to establish disability at step three.'" *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)).

The claimant bears the burden of establishing his impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's

articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listings 12.05 and 12.11. Tr. 540. Listing 12.05 is satisfied by either the A or B criteria being met:

**A.** Satisfied by 1, 2, and 3:

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22; or

**B.** Satisfied by 1, 2, and 3:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

   b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of

ORDER - 20

70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

   a. Understand, remember, or apply information; or

   b. Interact with others; or

   c. Concentrate, persist, or maintain pace; or

   d. Adapt or manage oneself; and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § 404, Appendix 1 to Subpt. P., App. 1 § 12.05 (Listing 12.05).

Listing 12.11 addresses neurodevelopmental disorders; learning disorders and borderline intellectual functioning are evaluated under Listing 12.11. *Id.* at §§ 12.00B9, 12.11. Listing 12.11 is satisfied by A and B:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

1. One or both of the following:

   a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

   b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").

2. Significant difficulties learning and using academic skills; or

3. Recurrent motor movement or vocalization; and

ORDER - 21

     B.  Extreme limitation of one, or marked limitation of two, of the

         following areas of mental functioning:

         1.  Understand, remember, or apply information;

         2.  Interact with others;

         3.  Concentrate, persist, or maintain pace; or

         4.  Adapt or manage oneself.

*Id.* at § 12.11 (Listing 12.11).

Plaintiff has not met his burden in demonstrating he meets or equals either listing. Regarding Listing 12.05, Plaintiff does not cite to any evidence to support a finding he meets or equals 12.05A. Listing 12.05B requires that all three subparts be satisfied. Listing 12.05. Plaintiff's IQ score is documented as 68 or 76, and his verbal score was 66, and there is evidence his condition began prior to age 22. *See* ECF No. 9 at 15-16. However, the listing requires an extreme limitation in one or marked limitation in two of the areas of mental functioning. Listing 12.05A(B)(2). Plaintiff cites to evidence of one opinion stating Plaintiff had only one marked limitation. ECF No. 9 at 15-16 (citing Tr. 470). Plaintiff has not demonstrated he meets Listing 12.05. He does not offer an explanation as to how his impairments are equal in severity to Listing 12.05.

Plaintiff contends the ALJ failed to consider Listing 12.11. ECF No. 9 at 17. However, the ALJ considered Listing 12.11 and found Plaintiff did not meet

or equal Listing 12.11.  Tr. 540.  Plaintiff appears to contend he meets or equals

Listing 12.11 because he has significant difficulties learning and using academic

skills and his verbal comprehension and working memory scores were in the

first percentile, which corresponds to marked limitations to understanding,

remembering, or applying information, and concentrating, persisting, or

maintain pace.  ECF No. 9 at 17 (citing 20 C.F.R. § 416.926a(e)(2)(iii)).  The

cited regulation applies to functional equivalence for children and not for adult

claims.  20 C.F.R. § 416.926a.  Further, multiple psychological consultants and

experts opined Plaintiff's limitations were less than marked.  Tr. 44, 94, 428,

476.  Plaintiff has not met his burden in demonstrating his impairments meet or

equal a listing.  The ALJ did not err at step three.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his symptom claims.  ECF No. 9 at 18-21.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

ORDER - 23

reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate

1  pain or other symptoms; 5) treatment, other than medication, an individual

2  receives or has received for relief of pain or other symptoms; 6) any measures

3  other than treatment an individual uses or has used to relieve pain or other

4  symptoms; and 7) any other factors concerning an individual's functional

5  limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL

6  1119029, at *7; 20 C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of

7  the evidence in an individual's record," to "determine how symptoms limit ability

8  to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

9      The ALJ found that Plaintiff's medically determinable impairments could

10  reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

11  statements concerning the intensity, persistence, and limiting effects of his

12  symptoms were not entirely consistent with the evidence.  Tr. 545.

13      *1. Lack of Treatment*

14      The ALJ found Plaintiff's allegations of disabling impairments were

15  inconsistent with his lack of treatment.  Tr. 545-46.  An unexplained, or

16  inadequately explained, failure to seek treatment or follow a prescribed course of

17  treatment may be considered when evaluating the claimant's subjective

18  symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  Plaintiff stopped

19  taking his medication for his diabetes and ADHD, reportedly because an

20  emergency department physician told him to discontinue the medications.  Tr.

ORDER - 25

545.  The ALJ found it was "highly improbable" an emergency physician would advise abruptly stopping medications.  *Id.*  Plaintiff alleges he stopped his medications because he was experiencing brain fog as a side effect, but the ALJ noted the alleged side effect is not documented anywhere in the record.  Tr. 545-46.  While Plaintiff alleges he was able to begin working at an SGA level after stopping medication because he has seen medical improvement since stopping the medications, Tr. 564-65, there is no medical documentation of such improvement.  At the remand hearing, Plaintiff's counsel stated that after the emergency department visit, Plaintiff stopped his medications and did not go to a primary care provider to discuss the medication cessation.  Tr. 564.  Plaintiff reported he did not go to "the doctor for two years during this closed [period]."  Tr. 565.  Plaintiff "maintains that concentration problems contribute to his disabling allegations," but offers no reasonable explanation as to why he did not pursue any treatment for the symptoms during the relevant period.  ECF No. 9 at 20.  The ALJ reasonably found Plaintiff's lack of treatment was inconsistent with his allegations of disabling limitations.  This was a clear and convincing reason to reject Plaintiff's claims.

### 2. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's allegations were inconsistent with the objective medical evidence.  Tr. 545-47.  An ALJ may not discredit a claimant's symptom

ORDER - 26

testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

As discussed *supra,* Plaintiff's allegations of side effects caused by his medications are not documented in the medical records.  Tr. 545-46.  The ALJ also found Plaintiff's performance on examinations was inconsistent with Plaintiff's allegations of disabling limitations.  Tr. 546-47.  While Plaintiff had some difficulties performing serial threes and spelling "world" backward, he was able to follow the conversation without difficulty, he was cooperative and friendly, and he had normal grooming, speech, thought processes, orientation, mood, and psychomotor activity.  *Id.*  Plaintiff reported he was able to interact with others, complete his activities of daily activity, read for up to three hours per week, play video games for five to seven hours in a day, and he reported being able to manage his anxiety and complete tests in school.  Tr. 546-47.  While Plaintiff alleges he had disabling limitations during the relevant period, there is

minimal objective evidence to support his allegations.  The ALJ reasonably found the objective medical evidence was inconsistent with Plaintiff's allegations.  This was a clear and convincing reason, along with the other reasons offered, to reject Plaintiff's claims.

### 3. *Improvement with Treatment*

The ALJ found Plaintiff's impairments, when treated, were not as severe as Plaintiff alleged.  Tr. 546-48.  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. § 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).  The ALJ found Plaintiff's ADHD was mostly controlled on medication, as supported by examination findings.  Tr. 546.  Records documented Plaintiff's ADHD symptoms as stable, and well-controlled on medication, and Plaintiff reported good results with Adderall.  Tr. 547.  Plaintiff also reported improvement with his diabetes medications.  *Id.*  The ALJ reasonably concluded that Plaintiff's impairments, when treated, were not as severe as Plaintiff alleged.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.  Plaintiff is not entitled to remand on these grounds.

**D. Step Five**

Plaintiff contends the ALJ erred by relying on vocational expert testimony rendered in response to an incomplete hypothetical.  ECF No. 9 at 21.  However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims.  *Id.* For reasons discussed throughout this decision, the ALJ's consideration of Plaintiff's claims and the medical opinion evidence are legally sufficient and supported by substantial evidence.  Thus, the ALJ did not err in finding Plaintiff capable of performing other work in the national economy based on the hypothetical containing Plaintiff's RFC.  Plaintiff is not entitled to remand on these grounds.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Martin O'Malley as Defendant and update the docket sheet.

2. Plaintiff's Brief, **ECF No. 9**, is **DENIED**.

3. Defendant's Brief, **ECF No. 14**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

ORDER - 29

1    The District Court Executive is directed to file this Order, provide copies to

2    counsel, and **CLOSE THE FILE**.

3    DATED May 20, 2024.

4                                      *s/Mary K. Dimke*
                                        MARY K. DIMKE
5                                UNITED STATES DISTRICT JUDGE

ORDER - 30